```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TRUSTEES OF THE NORTHEAST
CARPENTERS HEALTH, PENSION,                    OPINION AND ORDER
ANNUITY, APPRENTICESHIP, AND                   16-cv-4562 (SJF)(GRB)
LABOR MANAGEMENT COOPERATION
FUNDS,

                              Petitioners,

            -against-

XTREME DRYWALL & ACOUSTICS, INC.,

                              Respondent.
-------------------------------------------------------------X
```

**FEUERSTEIN, District Judge:**

By way of an August 16, 2016 Petition, Petitioners Trustees of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Management Cooperation Funds ("Petitioners") commenced this action pursuant to Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, seeking to confirm an August 26, 2015 Findings of Audit, Collection Award and Order (the "Arbitration Award") rendered pursuant to a collective bargaining agreement between the Northeast Regional Council of Carpenters (the "Union") and Respondent Xtreme Drywall & Acoustics, Inc. ("Respondent" or "Xtreme"). *See* Docket Entry ("DE") [1]. For the reasons set forth herein, the Arbitration Award is confirmed.

**I.    BACKGROUND**

    **A. The Parties and Relevant Agreements**

Petitioners Trustees of the Northeast Carpenters Health, Pension, Annuity, and Apprenticeship Funds are the trustees of multiemployer labor-management trust funds organized

1

and operated in accordance with Section 3(21) of ERISA. *See* Pet., DE [1], ¶ 4. Petitioners Trustees of the Northeast Carpenters Labor Management Cooperation Fund, successor to the Empire State Carpenters Labor Management Cooperation Fund, are the trustees of a labor-management cooperation committee established under Section 302(c)(9) of the LMRA. *Id.* at ¶ 5. Respondent is a New York corporation with a principal place of business located at 120 Old Route 9, Suite 4, Fishkill, New York 12524. *Id.* at ¶ 6. At all relevant times, Respondent was an employer within the meaning of Section 3(5) of ERISA. *Id.*

The Association of Wall, Ceiling and Carpentry Industry of NY (the "Association") entered into a collective bargaining agreement with the Union, effective from July 1, 2011 through May 31, 2016 (the "CBA"). *Id.* at ¶ 7. As a member of the Association, Respondent agreed to be bound by the CBA. *Id.* at ¶ 8. Pursuant to the CBA, Xtreme was required to "make contributions to the Funds for all work within the trade and geographical jurisdiction of the Union." *Id.* at ¶ 9. The CBA further provides that Respondent "shall be bound by and shall comply with the agreements, declarations of trust, plans and/or regulations of the fringe benefit funds, and the labor management cooperation committees, so designated." *Id.* at ¶ 10. One such agreement by which Respondent was bound is a Joint Policy for Collection of Delinquent Contributions (the "Collection Policy"), which Petitioners established in order to facilitate collection of "all employer contributions as they are due . . . ." *Id.* at ¶ 11; *see also* Collection Policy § 1.1(A).

Employers bound by the Collection Policy are required to submit to a payroll audit upon Petitioners' request in order to ensure that the employer has made all required contributions. *See* Collection Policy § 4.1. If the auditor determines that the employer has failed to make all required contributions, the employer must remit all unpaid contributions within thirty (30) days, as well as interest on the delinquent contributions at a rate seventy-five one hundredths of a percent (.75%) per month. *Id.* at § 2.1. If the employer fails to remit unpaid contributions identified in the audit, the

matter shall be sent to arbitration before Petitioners' designated arbitrator. *Id.* at § 2.2. Pursuant to the Collection Policy, the employer "shall be liable for all costs incurred in collecting delinquent contributions, including, without limitation, audit costs and arbitration fees." Pet. ¶ 19; *see also* Collection Policy §§ 1.1(C)(4), 6.1-6.3.

### B. Respondent's Contribution Delinquency

As permitted by the Collection Policy, Petitioners conducted an audit of Respondent's payroll records and contributions for the period from January 1, 2014 through February 17, 2015 in order to determine whether Xtreme had complied with its contribution obligations arising under the CBA. Pet. ¶ 15. The auditor determined that Respondent failed to make seventy-four thousand, two hundred and thirty dollars and fifty-seven cents ($74,230.57) in required contributions. *Id.* at ¶ 16. After Xtreme failed remit its delinquent contributions, Petitioners commenced arbitration before their designated arbitrator, J.J. Pierson, Esq. (the "Arbitrator"). *Id.* at ¶ 20. Although Petitioners sent Respondent a Notice of Intent to Arbitrate Delinquency, Respondent failed to appear at the August 19, 2015 arbitration hearing. *Id.*

In the August 26, 2015 Arbitration Award, the Arbitrator concluded that Xtreme was delinquent in its contributions required pursuant to the CBA, and ordered Respondent to pay a total of one hundred and one thousand, four hundred and sixty-eight dollars and eighty-three cents ($101,468.83), including: (i) seventy-four thousand, two hundred and thirty dollars and fifty-seven cents ($74,230.57) in unpaid contributions; (ii) four thousand, five hundred and thirteen dollars and twenty-nine cents ($4,513.29) in interest on unpaid contributions; (iii) six hundred and seven dollars and twenty-six cents ($607.26) in additional interest; (iv) fourteen thousand, eight hundred and forty-six dollars and eleven cents ($14,846.11) in liquidated damages; (v) nine hundred dollars ($900.00) in attorneys' fees; (vi) five thousand, six hundred and twenty-one dollars and sixty cents ($5,621.60)

3

in audit costs; and (vii) seven hundred and fifty dollars ($750.00) for the Arbitrator's fee. *Id.* at ¶ 22.

After Respondent failed to abide by the terms of the Arbitration Award, Petitioners commenced this action on August 16, 2016. *See* DE [1]. On October 27, 2016, Petitioners requested that their Petition be reviewed as an unopposed motion for summary judgment to confirm the Arbitration Award. DE [8].

## II. DISCUSSION

The Second Circuit has held that an unanswered petition to confirm an arbitration award is to be treated "as an unopposed motion for summary judgment." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006); *see also Trs. for The Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Earth Constr. Corp.*, No. 15 Civ. 3967, 2016 WL 1064625, at *3 (S.D.N.Y. Mar. 15, 2016) ("A district court should treat an unanswered petition to confirm or vacate as an unopposed motion for summary judgment and base its judgment on the record.") (internal quotation and alterations omitted). A motion for summary judgment, whether opposed or unopposed, "may not be granted unless all submissions taken together 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Phicon Constr.*, No. 13-CV-3089, 2014 WL 824324, at *5 (E.D.N.Y. Mar. 3, 2014) (quoting Fed. R. Civ. P. 56(c)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party bears the burden of establishing that there is no genuine issue of material fact. *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994). Where a motion for summary judgment is unopposed, the court must examine "the moving party's

submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial and that the movant is entitled to judgment as a matter of law." *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. J.H. Reid Gen. Constr. Co.*, No. 14-CV-6407, 2015 WL 8111121, at *2 (E.D.N.Y. Oct. 19, 2015) (Report and Recommendation), *adopted by*, 2015 WL 8207494 (E.D.N.Y. Dec. 7, 2015) (internal quotation omitted); *see also D.H. Blair & Co., Inc.*, 462 F.3d at 110 ("Even unopposed motions for summary judgment must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.") (internal quotation omitted).

It is well-established that "a court's review of an arbitration award is severely limited so as not to frustrate the goals of arbitration—namely, to settle disputes efficiently and avoid long and expensive litigation." *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Lazzaro Assocs., Inc.*, No. 12-CV-5651, 2014 WL 4175859, at *5 (E.D.N.Y. July 15, 2014) (internal quotation omitted); *see also Trs. of Nat'l Org. of Indus. Trade Unions Ins. Tr. Fund v. Davis Grande Co.*, No. 03-CV-6229, 2006 WL 1652642, at *2 (E.D.N.Y. June 9, 2006) ("The scope of judicial review of an arbitration award is extremely narrow."). Therefore, "the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co., Inc.*, 462 F.3d at 110 (internal quotation omitted). Given the limited scope of review, a court must confirm an arbitration award that "draws its essence from the collective bargaining agreement and is not the arbitrator's own brand of industrial justice." *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338*, 118 F.3d 892, 896 (2d Cir. 1997).

Petitioners have satisfied their burden in establishing that the Arbitration Award should be confirmed. Relying upon the audit of Xtreme's payroll records and contributions, as well as evidence presented at the arbitration hearing, the Arbitrator concluded that Xtreme failed to remit

5

seventy-four thousand, two hundred and thirty dollars and fifty-seven cents ($74,230.57) in required contributions from January 1, 2014 through February 17, 2015. *See* Arbitration Award ¶¶ 11-12. In addition to unpaid contributions, the Collection Policy entitles Petitioners to recover additional amounts for interest, liquidated damages, attorneys' fees, audit costs, and the arbitrator's fee. *See* Collection Policy §§ 1.1(C)(4), 6.1-6.3; *see also Earth Constr. Corp.*, 2016 WL 1064625, at *3 (confirming arbitration award based upon the parties' agreements, the audit, and live testimony at the arbitration hearing); *Trs. of New York City Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc.*, No. 12 Civ. 5, 2012 WL 3744802, at *3 (S.D.N.Y. Aug. 29, 2012) ("Where, as here, there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law, a court must confirm the award upon the timely application of any party."). As the Arbitration Award "draws its essence from the collective bargaining agreement, the court must affirm the award . . . ." *Lazzaro Assocs., Inc.*, 2014 WL 4175859, at *5. Therefore, Petitioners are entitled to recover one hundred and one thousand, four hundred and sixty-eight dollars and eighty-three cents ($101,468.83) as provided for in the Arbitration Award.

Petitioners also seek to recover a total of six hundred and forty-two dollars and fifty cents ($642.50) in attorneys' fees and costs incurred in connection with the instant Petition. *See* Pet. ¶¶ 32-34. The Collection Policy provides that, "[a]ttorneys' fees shall be due to the Fund from a delinquent employer at the hourly rate charged to the Fund for such services . . . for all time spent by Counsel in collection efforts," *see* Collection Policy § 6.2, and courts in the Second Circuit have held that a "[f]ailure to appear at arbitration or the confirmation hearing may result in a grant of attorneys' fees on equitable grounds." *New York City Dist. Council of Carpenters Pension Fund v. Brookside Contracting Co., Inc.*, No. 07 Civ. 2583, 2007 WL 3407065, at *2 (S.D.N.Y. Nov. 14, 2007); *see also Int'l Chem. Workers Union (AFL–CIO), Local No. 227 v. BASF Wyandotte Corp.*,

6

774 F.2d 43, 47 (2d Cir. 1985) ("[W]hen a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded."). Based upon the Court's review of, *inter alia*, the contemporaneous time records from the law firm of Virginia & Ambinder, LLP, submitted with the instant Petition, the Court concludes that Petitioners have satisfied their burden in demonstrating that the attorneys' fees and costs they seek to recover are reasonable. *See* Pet. Ex. F; *see also Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Fourmen Constr., Inc.*, 15-CV-3252, 2016 WL 146245, at *5 (E.D.N.Y. Jan. 13, 2016) (holding that 4.7 hours billed on an unopposed petition to confirm an arbitration award was reasonable, and awarding an hourly rate of $225 to a Virginia & Ambinder associate). Therefore, Petitioners are also entitled to recover six hundred and forty-two dollars and fifty cents ($642.50) in attorneys' fees and costs incurred in in connection with the instant Petition.

### III.  CONCLUSION

For the reasons set forth herein, the Arbitration Award is confirmed, and Petitioners are awarded a judgment against Respondent in the amount of one hundred and two thousand, one hundred and eleven dollars and thirty-three cents ($102,111.33). The Clerk of Court shall enter judgment in favor of Petitioners consistent with this Opinion and Order and close this case.

Dated: Central Islip, New York  
December 20, 2016

**SO ORDERED.**

*s/ Sandra J. Feuerstein*  
Sandra J. Feuerstein  
United States District Judge

7